## Baccaro Estate

*S. Thomas Bulfamonte*, for accountant.
*Thomas F. Doran*, for undertaker.

HOLLAND, P. J., November 2, 1953.—The account shows a balance of principal personalty for distribution in the sum of $26,798.56, composed of cash.

The transfer inheritance tax has been paid.

Lillian Ayres, one of the children of testatrix given in the will one sixth of the residue, predeceased testatrix, whereupon this one-sixth share, according to the terms of the will, goes to her three children in equal one-third shares, or one eighteenth of the residue to each of them. These three children are minors and, there being no testamentary guardian of their estates appointed by the will, the court is asked to appoint the executrix as their guardian respectively since, it is alleged, that was understood to have been the wish of deceased. Since testatrix did not designate the executrix as the testamentary guardian of the estates of these minors, the court cannot regard or consider any such understanding as equivalent to a testamentary appointment. Therefore, the one-eighteenth shares of these minors will be awarded to a guardian, respectively, of their estates to be duly appointed.

Philip J. O'Brien and Lawrence J. O'Brien, trading as O'Brien Funeral Home, filed a statement of claim which was heard at the audit, in which claimants claim a balance due of $237 on a total bill of $1,237 for the funeral of testatrix. The total bill rendered to the executrix was in the sum of $1,237. The executrix paid on account $1,000, and refused to pay the balance of $237 on the ground that the bill was exorbitant, and, apparently, beyond the amount which was ordered by the executrix.

At the hearing Philip J. O'Brien testified in favor of the claim. He represented that the day after the death of decedent he visited the late home of decedent, and, in the presence of the five surviving daughters of decedent, made the funeral arrangements. These five daughters are beneficiaries to the extent of one sixth of the residue, as hereinabove indicated. The three minors that are entitled to the remaining one-sixth share of the residue in equal one-third shares, were not present, and, as remarked by the court on the

44

record, it would have made no difference if they had been present as they could not have entered into any contract, not being sui juris. According to this witness, who is one of the claimants, the executrix stated that they wanted approximately the same funeral that was afforded by claimant at the time the father of these five daughters and the husband of decedent, was buried. The witness is rather vague as to the exact conversation but he wishes the court to infer that although the executrix and he did the actual negotiations, the other four daughters, by their conduct and manner indicated their assent. The next day two of the daughters, Mrs. McCabe and Mrs. Reed, in addition to the executrix, went to the place of business of the Boyertown Casket Company in Philadelphia and ordered the casket and overbox and clothing for the burial of decedent. The executrix, Mrs. Cipollone, states, however, that there was only one sister with her.

It appears from the testimony of both Philip J. O'Brien and Mrs. Cipollone that there were tags on the various items but that the executrix and the other sister or two sisters, whichever it was, did not look at the tags exactly. However, the casket afforded the father's funeral was $750, and although the similar casket furnished for the mother's funeral was $818, claimants allowed them to have the same casket at $750. With the increase in certain other items of charge it turned out that the bill for the mother's funeral was $74.25 more than the father's funeral.

There is considerable confusion in the testimony on both sides. It is apparent that claimant arranging for the funeral did not make it perfectly clear as to the exact price of the funeral. It is equally clear that the executrix and the other four sisters present at the time the arrangements were made did not demand an exact figure. It all seemed to be vaguely referred to the cost of the father's funeral some years theretofore, in 1946.

The will of decedent limits the amount of the funeral cost to $1,000, but I do not see how I can take this into consideration in this case. The will of decedent was not found until several days after the funeral, so that the executrix could not know what testatrix's direction was in this particular, much less could the undertaker know. If testatrix did not let the executrix know where to find the will after her death or give her some knowledge that this item was in the will, nobody can be blamed if the funeral bill was in excess of the amount desired by testatrix but testatrix herself. Were the executrix to have found the will before the funeral and found this provision in it and proceeded to order a funeral in excess of the amount designated by testatrix it might be possible to surcharge the executrix for the excess. Furthermore, if the executrix having found such a provision in the will and made the undertaker aware thereof, it very well might be that if the undertaker exceeded the amount designated in testatrix's will, he could not collect the excess against her estate. However, this was not the case here. The executrix did not know of the existence of this provision in the will, and, of course, the undertaker did not know either. I am of the opinion, therefore, that I must decide this case upon the question of the liability engaged by the executrix. As above indicated, the testimony is vague on either side and there is no evidence in the record to show that there was an exact figure stated either by the executrix in the presence of the five sisters or by the undertaker. As near as I can find in the testimony, the agreement was that the funeral was to be furnished at the same price as that charged for the father's funeral which was $1,162.75. This was thoroughly understood by claimant. It would seem, therefore, that an award of the difference between $1,162.75 and $1,000 paid on account would be the proper allowance to the claimants. However, since the three minors had no part in ordering of the

funeral and could not have been even though they had participated in negotiations, I am of the opinion that this excess of $162.75 should be charged against the one-sixth shares of the five daughters of decedent, and I so hold.

There is awarded to Philip J. O'Brien and Lawrence J. O'Brien, trading as O'Brien Funeral Home $162.75, the same to be paid in equal shares from the one-sixth shares of the five surviving daughters of the decedent.

Subject to the adjustment hereinabove provided in the opinion hereinabove, the net ascertained balance for distribution is awarded $100 to Julia Cipollone for masses, one sixth each of the residue to Julia Cippollone, Alva Reed, Anna McCabe, Louise DeBlasio, and Matilda Powers, and one eighteenth of said balance of the residue to guardians to be appointed respectively for William Gregory Ayres, Joseph Dennis Ayres, and Carl Philip Ayres. . . .

And now, November 2, 1953, this adjudication is confirmed nisi.